UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES SURETY COMPANY, et al.,** | ) | CASE NO. 1:05CV2337 |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) | |
| **KEYCORP, et al.,** | ) | **OPINION AND ORDER** |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion (ECF DKT #23) of Defendant KeyBank for Summary Judgment. For the reasons that follow, the motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiffs, United States Surety Company and Greenwich Insurance Company ("U.S. Surety"), brought this Complaint against Defendants, Keycorp, KeyBank National Association, and Key Bank USA ("KeyBank"), seeking to recover losses stemming from surety bond claims paid on behalf of U.S. Surety's principal and KeyBank's customer, L.M.

Lignos. Lignos was a Cleveland-based bridge painting contractor that bid upon and performed public works contracts. KeyBank, or its predecessor-in-interest, has been one of Lignos' commercial lenders since 1990. Beginning in 2003, U.S. Surety provided bonds for the protection of subcontractors and suppliers performing work on Lignos' public projects.

This case is a dispute over certain contract receivables on bonded jobs from 2004 and 2005. U.S. Surety alleges KeyBank, with superior knowledge of Lignos' financial problems in mid-2004, and without notice to U.S. Surety, failed to post project proceeds to the surety's obligations; unilaterally reduced monies available to Lignos on its line of credit; and applied bonded contract proceeds to obligations of Lignos that were not in default. As a result, Lignos failed to meet its bonded contract obligations, which led to U.S. Surety paying out claims in excess of One Million Dollars.

U.S. Surety claims it is entitled to recover monetary damages from KeyBank because it is Lignos' assignee and subrogee. Specifically, U.S. Surety alleges KeyBank intentionally misapplied and/or converted checks totaling Four Hundred Eighty Thousand Seven Hundred Ten Dollars and Thirty-Eight Cents ($480,710.38). U.S. Surety asserts multiple theories of recovery, including breach of fiduciary duty; negligence; breach of contract/third-party beneficiary; conversion; tortious interference with business relationship; and fraud. Also, U.S. Surety seeks a declaration as to the priority of competing mortgage documents filed against property owned by a Lignos sister company, Elias, LLC. U.S. Surety argues the undisputed fact KeyBank recorded its mortgage document without a full legal description renders KeyBank's lien on the property invalid. Thus, U.S. Surety claims a first lien position and seeks a judicial declaration of priority.

KeyBank counters that its security interests in the "disputed funds" were prior and superior to U.S. Surety's right of subrogation; that the relationship between bank and customer does not give rise to fiduciary duties; that no agreement existed to forbear on collection of KeyBank obligations until after bonded contracts were satisfied; that U.S. Surety was not an intended beneficiary of any purported agreement between the bank and Lignos; that there could be no conversion where KeyBank possessed superior secured interests in the disputed funds, and U.S. Surety possessed no ownership interest in them; that KeyBank did not tortiously interfere when it was privileged to enforce perfected liens; and that KeyBank made no fraudulent misrepresentation upon which U.S. Surety could justifiably rely.  In addition, KeyBank argues U.S. Surety had clear, unequivocal, and actual notice of KeyBank's first mortgage lien and U.S. Surety knew it was taking a second mortgage lien  —  not a first — on the Elias property.

KeyBank's evidence demonstrates that over the last ten years, Lignos executed approximately fifteen separate security agreements, pursuant to Article Nine of the Ohio Uniform Commercial Code (R.C. § 1309.101 *et seq*.), in favor of KeyBank and/or its predecessor-in-interest, to secure various commercial loans from the bank.  KeyBank was granted security interests in Lignos' machinery, equipment, inventory, accounts receivable, contract receivables, general intangibles, rights to payment and performance, whether now existing or hereafter arising.  Each security agreement secured all of Lignos' debts to KeyBank, both current and future.  For example, the language of the earliest security agreement between Lignos and Society National Bank (May 1, 1995) (Defendant's Exhibit "B") recites: "this security interest shall cover all other obligations of the undersigned or

Borrower to Bank of every kind and description, including those interests contingent, to become due and hereafter arising . . ." Likewise, the agreement between Lignos and KeyBank (May 13, 2003) (Defendant's Exhibit "B") reads in pertinent part: "In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, . . . , whether now existing or hereafter arising . . ." In addition to the broad application of these security agreements, each of them includes an integration clause which reads, for instance:  "This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment." (October 31, 2002) (Defendant's Exhibit "B")  – or – "Entire Agreement.  This Agreement contains the entire agreement between the parties, and no oral agreement shall be binding."  (May 1, 1995) (Defendant's Exhibit "B").

In partial repayment of its outstanding secured debts, KeyBank accepted payments totaling $480,710.38 in earned contract proceeds from Lignos in late 2004 and 2005. U.S. Surety contends it was entitled to those funds because the Agreement of Indemnity bestowed upon it " a first lien position with regard to any contract proceeds on U.S. Surety bonded contracts."  (Complaint ¶ 12).  U.S. Surety asserts its right of subrogation derives from the Agreement of Indemnity, dated May 14, 2003, between Plaintiffs and L.M. Lignos to provide construction bonds (bid bonds, performance bonds and payment bonds) on public bridge painting contracts performed by Lignos. (Exhibit "1" to Deposition of Richard E. Klein, ECF DKT #30).  U.S. Surety concedes it did not make its first payment on any of the

bonds until February 23, 2005, one month after KeyBank received the last of the "disputed funds."  (U.S. Surety's Brief in Response to Summary Judgment, ECF DKT #35, p.12).

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion for Summary Judgment**

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See, Fed. R. Civ. P. 56(c).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005). This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n*., 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Breach of Contract/Third-Party Beneficiary**

In its second claim for relief (which the Court will address out of sequence), U.S. Surety alleges that, in 2004, oral and written representations by and between Lignos and KeyBank, relating to handling and payment of bonded contract proceeds created an enforceable contract, to which U.S. Surety became subrogated. Further, U.S. Surety alleges it was an intended third-party beneficiary of the contract "since it was agreed that all proceeds from U.S. Surety bonded contracts would be paid to the subcontractors and suppliers performing work on those projects for the purpose of diminishing U.S. Surety's risk." (Complaint ¶ 36). U.S. Surety claims KeyBank breached the contract, causing substantial direct and consequential damages.

U.S. Surety contends "the agreement between the parties was codified by a very detailed memorandum prepared by Key Bank representative John Hecker." (Hecker Memo, Complaint Exhibit "A") (U.S. Surety's Brief in Response to Summary Judgment, ECF DKT #35, p.8). U.S. Surety also insists KeyBank agreed:

"Lignos and KeyBank would utilize the U.S. Surety bonded contract funds to pay off

the bonded obligations including payment to all subcontractors and suppliers on the U.S. Surety bonded jobs."

— and —

"KeyBank would not be entitled to off set or payment against its loans until after all of the U.S. Surety bonded obligations were paid."

Upon review of the Hecker Memo, the Court is convinced it is an internal document between John Hecker and his superior, Craig Haverlock, in the bank's asset recovery group, recommending a forbearance until December 31, 2004, to allow Lignos to pay down his debt obligations and to permit KeyBank to minimize its risks.  The forbearance terms included an increased interest rate, a third mortgage on real property, and application of all proceeds *at the sole discretion of KeyBank*.  However, U.S. Surety and KeyBank concur that no forbearance agreement was ever executed based upon the Hecker proposals, or otherwise.  In fact, Lignos was represented by counsel at the time, Marvin Sicherman; and Sicherman testified he considered the proposed agreement "utter nonsense" and "put it in the file and buried it."  (Sicherman Depo. ECF DKT #29, p.24).

First, a careful reading of the Hecker Memo and the Proposed Term Sheet (Defendants' Exhibit "C") reveals no provisions to pay off bonded obligations first, nor to forego repayment to the bank until after U.S. Surety's covered claims are paid.

Second, any of the oral understandings (even those outlined in the Hecker Memo) upon which U.S. Surety relies are invalidated by the Statute of Frauds.

R.C. § 1335.02(A)(3) defines a "***loan agreement***" as: "one or more promises,

-7-

promissory notes, agreements, undertakings, security agreements, mortgages, or other documents or commitments, or any combination of these documents or commitments, pursuant to which a financial institution ***loans or delays, or agrees to loan or delay, repayment of money, goods, or anything of value, or otherwise extends credit or makes a financial accommodation.***"  (Emphasis added).

R.C. § 1335.02(B) provides: "No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought."

Thus, as a matter of law, U.S. Surety's action against KeyBank based upon the purported oral forbearance or extension to Lignos is barred because it constitutes a loan agreement, which is not in writing nor signed by the party to be charged.  Any oral understandings, upon which U.S. Surety relies, are unenforceable.  The long-standing relationship between Lignos and KeyBank, evidenced by the series of security agreements, was not modified, as U.S. Surety suggests, to prioritize payments on bonded contracts before repayment to KeyBank.  No written modification or amendment was executed as required by the express terms of the security agreements referenced above; and any oral discussions or promises are legally irrelevant.

Also, in the second claim of Plaintiffs' Complaint, U.S. Surety alleges it can recover against KeyBank based upon its status as a third-party beneficiary to the alleged forbearance agreement.  At the outset, without a valid, existing contract, there can be no third-party beneficiary.

-8-

Next, to recover as a third party on a breach of contract claim, "it must be shown that the contract was made and entered into with the intent to benefit the third person." *Chitlik v. Allstate Ins. Co.*, 34 Ohio App. 2d 193, 196 (1973). It is axiomatic a surety is not subrogated to the rights of its principal until it pays on its bond. *In re Mid-Valley Contracting Co.*, 24 Ohio Misc. 105, 108 (S.D. Ohio 1970) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S.132 (1962). The uncontroverted evidence in this case demonstrates U.S. Surety did not make payment on any of the Lignos bonds until February 23, 2005; and KeyBank received the last of the "disputed funds" one month earlier. At the time of the Hecker Memo, relating to discussions and preparation of the proposed forbearance terms in October of 2004, U.S. Surety had, at best, an inchoate equitable right of subrogation. Although possessing incidental or indirect standing, U.S. Surety was not an intended third-party beneficiary to any KeyBank-Lignos contract as a matter of law.

Even viewing the evidence in a light most favorable to U.S. Surety, and accepting, for purposes of this analysis, the existence of an agreement between Lignos and KeyBank, as U.S. Surety proposes, this Court's determination on the third-party beneficiary issue is unchanged. At ¶ 24 of the proposed Debt Modification Agreement (Defendant's Exhibit "D"), the parties recite: "All of the terms and conditions of this Agreement are for the sole and exclusive benefit of the parties to this Agreement . . . and no other person or entity shall, under any circumstances, be a beneficiary of such terms or conditions." There can be no clearer expression of the contracting parties' intent *not* to consider the interests of third parties like U.S. Surety.

Case: 1:05-cv-02337-CAB  Doc #: 42  Filed: 08/13/07  10 of 16.  PageID #: 343

**Breach of Fiduciary Duty/ Negligence**

U.S. Surety alleges, as the result of express and implied agreements between Lignos and KeyBank, KeyBank owed a fiduciary duty to Lignos to make payments on the bonded contracts from a specially-created "blocked" account. By virtue of its payments on behalf of Lignos, U.S. Surety claims to be subrogated to Lignos' rights, causes of action, claims and demands against KeyBank; and thus, can prosecute this claim for breach of fiduciary duty.

However, the "blocked" account was never set up. (Hecker Depo., ECF DKT #27, pp. 89-90). Further, as a general principle, there is no fiduciary relationship between a bank and its customer. *Groob v. KeyBank*, 108 Ohio St. 3d 348, 353 (2006). The relationship between a creditor and debtor is "one governed by freedom of contract." *Stone v. Davis*, 66 Ohio St. 2d 74, 78 (1981). On the other hand, a fiduciary relationship arises when "both parties understand that a special trust or confidence has been reposed." *Id*. As was mentioned earlier, Lignos had the advice and assistance of counsel, Mr. Sicherman, during the relevant time frame. He cannot now insist he entrusted KeyBank with protecting his interests. Even if a creditor provides business advice or promises to forbear on loans for a set period of time, the arm's length relationship between lender and customer is not transformed into a fiduciary one. *Kohl v. National City Bank*, 2006 WL 1063750, 2006-Ohio-2031, *4 (5th Dist. Apr. 18, 2006), citing *Needham v. The Provident Bank*, 110 Ohio App. 3d 817, 829 (1996).

U.S. Surety alleges an alternative claim for negligence. To recover, U.S. Surety must show (1) the existence of a duty; (2) a breach of duty; and (3) an injury proximately resulting. *Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79, 81 (2003). As the Court just explained, there is no fiduciary duty owed. Obligations, if at all, are imposed upon KeyBank by contract; and

-10-

"it is no tort to breach a contract." *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 694 (1997).

Although the Complaint does not state it specifically, the Court will address U.S. Surety's contention in its brief that KeyBank breached its commercial banking duties. The surety's expert, Stewart Greenburg, in the Rule 26 (a)(2) disclosure, opines various breaches occurred when KeyBank failed to provide written notice of demand on Lignos' line of credit or written notice of default and acted with a generalized lack of good faith and fair dealing. Nevertheless, U.S. Surety has supplied no statutory or case authority supporting a claim or private right of action for negligent commercial banking or lending. Thus, this claim cannot survive.

**Conversion of Specific Money**

U.S. Surety alleges all proceeds from bonded projects were "trust funds"; and KeyBank "seized and intentionally converted these 'trust funds' deposited into the 'special' or 'blocked' account and refused to surrender the same to Lignos, U.S. Surety or to the subcontracts and suppliers." (Complaint ¶ 43).

The elements of conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership." *Joyce v. General Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990). U.S. Surety has not met its burden of showing the existence of these elements. Whether or not the proceeds were "trust funds", KeyBank did not deposit them into any "special" or "blocked" account. No such account ever existed. Moreover, the proceeds were not the property of U.S. Surety. Until the surety made payments on the bonds for its principal (Lignos), it had no claim to the

proceeds from Lignos' public projects.  U.S. Surety admits payments, pursuant to the bonds it issued, were made beginning  February 23, 2005; yet KeyBank had received the last of the "disputed funds" in January of that year.  The "disputed funds" were not U.S. Surety's; and KeyBank possessed superior rights by virtue of its perfected security interests. Since none of the elements have been demonstrated and there is no genuine issue of material fact as to any of the elements, U.S. Surety cannot prevail on its conversion claim.

**Tortious Interference with Business Relationship**

U.S. Surety alleges KeyBank tortiously interfered with its business relationship with Lignos.  This tort occurs when " a person, without privilege to do so, induces or otherwise causes a third person not to enter into or continue a business relationship with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (1995).  The competent evidence in this case shows KeyBank perfected at least fifteen security interests, reflecting loans collateralized with Lignos' tangible and intangible property.  Enforcing those legal rights and collecting on legitimate debts are not improper actions nor without privilege.  In its brief, U.S. Surety argues intentional and improper action taken by KeyBank "ended" the business relationship between Lignos and U.S. Surety.  U.S. Surety fails to explain, or to provide evidence how the "end" of the business relationship was anything other than the surety's performance of its obligations to its principal under the policy.  In other words, KeyBank did not act "without privilege" nor improperly to procure the termination of the business relationship between Lignos and U.S. Surety.  This claim also must fail as a matter of law.

**Fraud**

U.S. Surety alleges KeyBank intentionally made fraudulent misrepresentations and concealed facts, in order to mislead and cause Lignos and U.S. Surety to justifiably rely to their detriment.  The Complaint contains nothing more specific than that  ----   no description of the misrepresentations; how they were communicated; when; or by whom.  Facially, this claim is defective pursuant to Fed. R. Civ. P. 9(b).

Moreover, fraud cannot be predicated upon misrepresentations of future events.  So, alleged proposals of how KeyBank would apply the "disputed funds" are promises or predictions which cannot form the basis for detrimental reliance on the part of Lignos or U.S. Surety.  *Yo-Can, Inc. v. The Yogurt Exch., Inc*., 149 Ohio App. 3d 513, 525 (2002).  Further, since this Court has already determined that no fiduciary relationship exists under these facts, KeyBank was under no duty to disclose.  *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.  3d 433, 442 (1996); generally, *Russ v. TRW, Inc*., 59 Ohio St. 3d 42, 49 (1991).

**Punitive Damages**

At ¶ 53 of the Complaint, U.S. Surety alleges: "The acts and omissions of the Defendants were perpetrated consciously, deliberately, willfully, intentionally and maliciously and therefore the Plaintiffs are entitled to an assessment of punitive damages against the Defendants."

No civil action may be maintained simply for punitive damages.  *Bishop v. Grdina*, 20 Ohio St. 3d 26, 28 (1985).  Recovery of punitive damages is contingent upon establishing liability under substantive claims, such as fraud or intentional torts.  Since this Court holds KeyBank is entitled to summary judgment as a matter of law on all of U.S. Surety's claims,

U.S. Surety cannot recover any punitive damages.

**Mortgage Dispute (Declaratory Relief)**

According to the Complaint, both U.S. Surety and KeyBank have recorded mortgages encumbering property known as 4830 Briar Road, Cleveland, Ohio 44135 ("Elias Property"). Both parties acknowledge KeyBank's mortgage was recorded first in time, i.e., in 2000; whereas, U.S. Surety's mortgage was recorded in 2003. U.S. Surety contends, however, that KeyBank's lien is not valid nor effective because the legal description of the real property to be encumbered, including "metes and bounds", was not attached.

KeyBank admits the legal description was inadvertently omitted and only the street address was recited. Yet, KeyBank asserts Ohio statutes governing the recording of mortgages, conveyances and encumbrances do not require a "metes and bounds" description of the real property for a mortgage to be valid. Pursuant to R.C. § 5301.01(A), a mortgage shall be signed by the grantor or mortgagor, acknowledged by the grantor or mortgagor before a judge, clerk of a court of record in this state, or notary public, who shall certify the acknowledgment and subscribe the official's name to the certificate of the acknowledgment. There is no question KeyBank's mortgage satisfies these requirements. Furthermore, recording an instrument in compliance with the statute serves as "constructive notice of the instrument to all persons, including without limitation, a subsequent purchaser in good faith or any other subsequent holder of an interest in the property." R.C. § 5301.01(B)(1)(b).

According to the testimony of U.S. Surety's in-house counsel, Emily Brennan: "We received a property and judgment report and it listed KeyBank as having a first mortgage, which we assumed was valid at the time. We had no reason to assume otherwise. And we

took a second mortgage." (Emily Brennan Depo. ECF DKT #28, p.51).

The uncontroverted evidence demonstrates U.S. Surety, a sophisticated business entity, performed a title investigation, was informed of a prior recorded lien on the Elias Property, and took a second mortgage.  For a mortgage to be valid, Ohio law does not specifically require the attachment of a "metes and bounds" legal description. R.C. § 5301.01(A).  Also, the protections afforded by the recording statutes are intended for good faith purchasers or interest-holders without knowledge of prior deeds or instruments, not for entities like U.S. Surety which have the ability and duty to investigate to protect their financial interest.  In the instant situation, U.S. Surety did, in fact, perform a title search and learned of the encumbrance recorded earlier by KeyBank.  This Court is not bound by law or equity to declare U.S. Surety's position as superior based upon a technical, scrivener's error. Therefore, the claim for declaratory relief is denied.

### III. CONCLUSION

As a matter of law, no enforceable contract exists which obligated KeyBank to apply deposited proceeds to satisfy Lignos' subcontractors and suppliers before collecting on its own secured loans.  KeyBank owed no fiduciary duties to Lignos, as the relationship was purely a commercial arm's length relationship between lender and customer.  U.S. Surety had no rights to the "disputed funds" until it paid on the bonded claims.  KeyBank, therefore, had a prior, superior interest in the "disputed funds" and could not have converted them. KeyBank did not act improperly nor without privilege in its dealings with its customer Lignos; and there is no evidence KeyBank procured the termination of the business

relationship between Lignos and U.S. Surety.  U.S. Surety has failed to present evidence of any misrepresentations made by KeyBank upon which Lignos/U.S. Surety reasonably relied to its detriment.  U.S. Surety, as a sophisticated commercial enterprise, took appropriate steps to examine the record title for the property offered as security for its mortgage; and acquired actual knowledge of KeyBank's prior lien.  No defect or technical error in KeyBank's recorded instrument justifies a legal declaration subordinating KeyBank's lien to that of U.S. Surety.  Finally, since U.S. Surety cannot prevail on any of its substantive claims, it is not entitled to recover punitive damages.

For the foregoing reasons, and based upon the parties' arguments, submitted evidence and applicable legal authority, there are no genuine issues of material fact; and Defendant KeyBank is entitled to summary judgment as a matter of law on every claim in U.S. Surety's Complaint.

**IT IS SO ORDERED.**

**DATE: August 13, 2007**

    **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**